Good morning, and it pleases the Court, Tracey Dressner for Petitioner William Harloff. There are two issues in this case. The first is whether the trial court violated Mr. Harloff's constitutional right to be present at his trial. When it began the trial, including the direct testimony, about 80% of the direct testimony of his ex-girlfriend who had accused him of assaulting her. And the second is whether his absence from that part of the trial was prejudicial. The first one is a de novo review. The second one is an objectively unreasonable application. If the Court has no preference, I'm going to focus on the prejudice first. This case is unusual, because typically in a absence of presence, lack of presence at a trial, it's hard to pinpoint what the defendant could have contributed. But here we know that it had a profound effect on the testimony that the accuser gave. At the opening statement, for which Mr. Harloff was not present, the DA tells the jury that he has no idea what Eichler's testimony will be, that at her preliminary hearing she had claimed that she had no memory, she didn't remember what happened, and he, you know, had an expectation that that might be her testimony again at trial. But then she comes up to testify, and Mr. Harloff's not there. And she not only tells this story about being assaulted, but she tells this horrific tale, embellishes it with a lot of testimony and stuff that details that were never told before. She never told the police. She never reported to anybody else. And on cross-examination, when she's asked why she's providing this testimony compared to her preliminary hearing testimony, she says she testified differently because Mr. Harloff wasn't there, and he was present at her preliminary hearing. So it's hard to get a clearer case of where you can pinpoint that there were some prejudice. Except that he testified. Right, he testifies, but he testified that she was in a delirious rage and hit herself in the head with a car distributor cap. Right? Correct. And then he poured iced tea on her head because she was bleeding from self-inflicted wounds, and he was trying to clean her up. Correct. He slapped her to get her out of her rage. She fell and scraped her knee. He threw a coffee mug and broke it after she left the apartment. What if the jury just didn't believe him? Well, the issue is that this was kind of a credibility contest. He said, she said. They were the only two people that were present. Right, but there were witnesses who responded right afterwards. There was a police officer and there was a neighbor in the apartment who saw her come screaming, running out of the room. There were, but the test, two responses to that. One is that we're comparing what she presented to the jury who had a determined credibility versus what she might have presented had Mr. Harloff been sitting there in the courtroom and she had, and there was a face-to-face confrontation, which is what we expect out of our criminal trials. But the other is that the test for prejudice, for harmless error, isn't, well, could they have convicted him? Could they have convicted him had she provided the same testimony that she gave at the preliminary hearing? That's not the test. The test is we look at what happened and did that contribute to the verdict. Absolutely, her testimony contributed to the verdict. Well, what says the test is did that contribute to the verdict? Well, where does that test come from? I'm not aware of such a test. I mean, contribute to the verdict is too amorphous a standard. Anything can contribute to the verdict. Can the government prove beyond a reasonable doubt that the error complained of did not contribute to the verdict? That's the Chapman error. That's beyond a reasonable doubt. And would the conviction have, is it beyond a reasonable doubt that the conviction would have resulted anyway? In that case, contributing to the verdict as a piece is too amorphous to evaluate. The question becomes would the verdict have been the same? And what, I hear what you're saying with regard to how her testimony varied, and the jury may have gotten a different impression with regard to credibility. But in the end, your client told a story. And the harder question to me seems to be the one Judge Kristen posed, which is what would have caused a jury to believe his version? If they don't believe his version, it's hard to see how he doesn't get convicted. Because by the time he testifies, this is all the things that she testified about, too, that had never been said before to the neighbors, to the police at the preliminary hearing that she says she testified to because he wasn't there. What are those things? It's that she said he made her sign a paper confessing to misdeeds while he was in jail, that he hit her with a fist more than ten times when she had told the police that he slapped her, and that was the extent of the hitting, that he pierced her shirt at a breast level with pliers, that he hammered a pair of scissors into her foot with a hammer, that he threatened to use a power drill on her, that he threatened to send his homeboys after her if she reported him to the police, and that he hit her multiple times in the head with a ten-pound car distributor when she had told the police that he hit her once. So by the time Mr. Harloff testifies, you are just appalled at what this man did. Appalled. I mean, this is her working out. And then he testifies that she hit herself in the head with a distributor. Correct. And what's going to make the jury believe the alternative version? Well, we don't know. But we're looking at the absence of that this horrific tale was portrayed by a woman who said she was told this tale because Mr. Harloff wasn't there. Mr. Harloff had a right to be there. No, that's not what she said. She said it was easier to testify because he wasn't there. But you're missing something. The jury was surprised at the fact that she hadn't testified before and hadn't given a statement about that. So they could easily accept the premise that she felt freer to testify. And the real question is not that. It is whether or not the state court applied Chapman in an objectively reasonable manner. And they did. So first of all, they say they gave five reasons that there was no prejudice. That the accuser's vague preliminary hearing testimony wasn't inconsistent with her trial testimony. So what? She basically said she had been hit and she didn't remember who did it and she didn't remember any details. That doesn't so what does that tell you about anything? That her trial testimony was not inconsistent with her prior statements to the police and her neighbors. Very, very small part of her testimony was not inconsistent. All of those things I just testified to were completely inconsistent or at least were never said before in any forum in any fashion. Okay. We omitted previously. And I don't want to interrupt you, but maybe the obvious question is why wouldn't the jury just look at this story, including the police responding and that she ran hysterical, you know, screaming to the apartment of neighbors and say this is just a classic case of domestic violence. Of course she didn't want to testify. We see this all the time. But that's not what Chapman, that's not what the Chapman test says. And I have a whole section in my brief with all of the different United States Supreme Court explanations of how the Chapman error test is applied. And it's not simply so what would they have convicted him anyway? The question is did his absence, did what happened because of his absence from the trial affect the jury's verdict? And how can you say that it didn't? Again. Well, in one way it may have affected the jury's verdict because she testified with a lot more detail and she was subject to impeachment for that. And the jury had a reason to really doubt her that they may not have had otherwise, right? But hearing it, having a jury hear it and finding out that she testified differently at the preliminary hearing is different than looking at this all occurred because of what the trial judge did about Mr. Harloff's injuries and his ability to seek some medical treatment for his injuries and his failure to delay the trial a couple of hours so that Mr. Harloff could have been present. Would the, you know, the, had she testified similar to her preliminary hearing, it would have been a very different situation. Maybe Mr. Harloff wouldn't have even testified. We don't know what would have happened had he been there and she testified consistent with her preliminary hearing. Well, he can't control all of that. Well, I'm sorry. She could have testified at both proceedings consistently and not been believed. She could have testified inconsistently and been believed. That's not the test. But we, but, but to talk, but to say that, well, he wasn't prejudiced because he testified and they found, might have found his story ridiculous is presupposed Not might have found. What would, what tells us that they wouldn't have found? I mean, that's, it's beyond a reasonable doubt. I understand that standard. We have to conclude beyond a reasonable doubt that they wouldn't have believed his story. They would have convicted him. And that's the question we've been trying to pose. He, he, he, he might not have testified. I mean, we're saying these are two, both tales are outlandish. I mean, both tales are outlandish. The answer was somewhere in between probably what the two of them testified to. Did you want to save any time? Because you're, you're pretty much out of time. All right. Thank you. We'll put another minute on the clock so you can plan accordingly. Okay. Counsel. Good morning. May it please the court. Deputy Attorney General Paul Theis-Frappelli. Your Honor, this court should reject petitioner's contentions for two reasons. First, because the trial court did not err in finding that petitioner voluntarily absented himself from the beginning of his trial after he refused to come out of a cell and then asked to be taken for a medical evaluation upon being ordered to appear in trial. And second, even assuming this court finds that trial court's first determination was made in error, the California Court of Appeal did not unreasonably find that absence prejudicial beyond a reasonable doubt. Now, I understand petitioner or appellant has focused most of their time on prejudice. I'm happy to do the same unless this court has any other questions about the first issue. Moving to the second issue, assuming that this court does find error as to the first point, petitioner cannot show that there is a substantial likelihood that his absence affected the jury's verdict. Now, to address petitioner's first point, that upon, excuse me, upon petitioner's absence, that Breonna took every opportunity to embellish her testimony. The facts surrounding her testimony show that to be untrue. First, Breonna remained forgetful and unsure and still fuzzy about the incident leading in petitioner's absence and continued to minimize petitioner's behavior even while petitioner was absent. How? Specifically, Your Honor, the prosecutor offered up the incident of pulling out a power drill, plugging it in, turning it on, and petitioner then explaining to Breonna how people use power drills. She was offered the opportunity to say, isn't that a threatening act? And she said, no, I would not characterize that as a threatening act. That is a direct – that directly undermines the idea that Breonna took every opportunity in this absence to embellish her testimony and make petitioner look as worse as possible. Additionally, Breonna's – That's not really the question, though. I mean, her testimony, if you compare it to what happened before – Yes. What she acknowledged, her testimony was at a minimum more vivid during the time that he wasn't there. Yes, Your Honor, and I'd like to clarify a specific point that this Court has already addressed and discussed as to Breonna's reasoning for testifying differently to the preliminary hearing as she did to trial. I want to clarify this, and if I may, read from the excerpts of the record on page 117 to page 118. Can I – before you do that, it's not just the discrepancy of her trial testimony and the preliminary hearing, right? There's also quite a discrepancy between her trial testimony and what she told the police officer, isn't there? Your Honor, there is some details that are added at trial that were not there, that she did not tell the officer at the – I'm going to take that as a yes. Is that right? Yes, Your Honor. Okay, go right ahead with that. Not inconsistent, yes, but, Your Honor, but there is more detail, absolutely. In explaining why she testified differently to the preliminary hearing as she did to trial, she says, and I quote – again, this is a transcript, so it might be difficult to make out – but she says, quote, it made it a lot easier for me to talk about it and to say it because I wasn't, and back then, and I still am, like I said, he said that if I ever put him in jail, I better move out of the area because his homeboys would come after me. And I'm not – I was living in the area back then still, and that's why. I was very scared. She testified she had moved out of the area, didn't she? Excuse me, Your Honor? She testified that she had moved out of the area, didn't she? Absolutely. Yes, Your Honor. And in looking at the entirety of that statement, Breonna's testimony there explains that the reason for her testifying differently at trial in his absence is not because Petitioner was absent, but because at the time the preliminary hearing took place, she was still living in the area and therefore under the threat of Petitioner's original statement that his homeboys would come after her. At trial, she is no longer living in that area, and that is the reason why Breonna testified differently at trial than she did at the preliminary hearing. So while there is some mention of Petitioner's absence in that explanation, looking at the entirety of that statement as the Court of Appeal did, it shows clearly that Breonna's emphasis and testimony differs not because of his absence, but because of the threat that it no longer existed at the time of the trial. As you say, these are sometimes hard to parse, but she does explicitly say that Mr. Harloff was not present in that chair. Yes, Your Honor. What is she referring to by that? Your Honor, I believe at that point that is within the context of explaining that at the time Petitioner at the preliminary hearing was present and that threat did exist, given the fact that she was still living in that area. But given the entirety of the statement at trial, it suggests that the reason that Breonna testifies differently is because not only is Petitioner not there, but primarily because Petitioner, she's no longer living in the area. When she made this statement, counsel, here's what I'm trying to decipher the answer to Judge Clifton's question. When she made the statement, she was in the courtroom, wasn't she? Yes. I understand. And the point was he wasn't sitting right there at counsel table. That's why it was easier for her to testify. Isn't that what she means? No, I don't believe that's the case, Your Honor, because specifically she does say it made it a lot easier for me to talk about it and to say it because at the time, then she goes on to explain that specific threat that existed at the preliminary hearing, that no longer exists at the trial. I thought this was uncontested, that she said it was easier to testify because he wasn't there for the first hour. Your Honor, the California Court of Appeal looked at that statement in its entirety, and upon looking on page 117 and 118 of the excerpts of the record, that exact full statement does appear because of the idea that she uses the word because, and therefore she says, and that's why. Surrounding and bookending this explanation of the threat that exists at the preliminary hearing that no longer exists at trial, the entirety of the statement does provide context to Breonna's statement. And while Your Honor does acknowledge that there is some reference to Petitioner not being there, the entirety of the context focuses on the threat that no longer exists at trial. But this is not the only thing to suggest that Breonna... Threats that no longer exist at trial, you mean at the time of trial? At the time of trial, yes, Your Honor. Because she'd moved out of the area. Exactly, Your Honor. But this is not the only evidence that we have to suggest that Breonna would not have testified any differently had Petitioner actually been there. Upon Petitioner actually being there at trial, Petitioner, Breonna did not alter or recant her testimony. She continued with her testimony both on direct, cross, and redirect, and identified Petitioner in court. And in looking at the context of her statements as to explaining why she testified differently, in looking at the context to explain what she testified to both in his absence and in his presence, it shows that there's nothing to suggest that it's not likely that Petitioner's presence would have made any difference in her testimony at trial. Nevertheless, Petitioner's absence could not have made an impact because the weight of the evidence of his guilt, as this Court has suggested, is overwhelming. Breonna's testimony, this is not a he-said-she-said scenario, as Petitioner implies. Breonna's testimony was directly corroborated by both the physical evidence, both the photographs of her injuries showing lacerations to her head, her hands, her arms, and her knee, as well as a laceration to her scalp that required five to six staples. That directly corroborates her testimony that he hit her more than ten times with a carburetor, hit her in her head, knees, and elbow with a hammer, among other injuries. Furthermore, her testimony is also corroborated by the testimony of the neighbor who saw Breonna run out of the apartment screaming, he's going to kill me. Five to ten minutes later, the neighbor sees a person who looks like Petitioner running out of the apartment, yelling and screaming, she can't, excuse me, she can't have my house, she can't have my stuff, she can't have my life, F her, I'm going to kill her. That directly corroborates Breonna's testimony here. Now, by contrast, Petitioner's account for this is that her injuries are self-inflicted. And that absurd explanation aside, his testimony is directly contradicted by that of the other witnesses. For example... What about the scenario suggested that he wouldn't have testified? He wouldn't have felt the need to testify if her testimony wasn't as strong as it turned out to be. I'm sorry, Your Honor, may you repeat the question, please? Well, I thought I understood from Petitioner's counsel that we have to figure out what would have happened. And if we accept for a moment the premise that her testimony would have been more like the testimony she gave at the preliminary hearing, then maybe he doesn't see the need to testimony or to offer the story which the jury did not believe with regard to her hitting herself. If that was the case, Your Honor, then Petitioner would have no opportunity to present, he still would have had that opportunity to present himself and present his account. No, but that's not the question. The question is maybe he wouldn't have been motivated to do so. If the jury had only heard at trial what she said at the preliminary hearing, he may not have chosen to take the stand. His own testimony was very damaging. Yes. Could they have convicted him based upon her testimony at the preliminary hearing? I'm sorry, Your Honor. Could they have convicted him based on her testimony if her testimony had been the same? Yes. Could they have convicted him? Yes, because we still have the testimony of the neighbor who still testified to the fact that she ran out of the apartment screaming, he's going to kill me. A petitioner runs out of the apartment yelling, I'm going to kill her. We still have the photographic evidence of her injuries, which support the details presented by the prosecution of the types of injuries that Petitioner inflicted over a two- to four-hour period. And the police officer testified to what? The police officer testified, in addition to the preliminary hearing, to a variety of the details that Brianna told him at the hospital following the incident. Can you take them off for us? Yes, Your Honor, absolutely. If I may, for my notes, just very quickly. Yes, sure. Yes, thank you. And I understand I'm out of time, but I would absolutely love to. You spoke to Brianna at the hospital. She said at 10 a.m. she woke up with Petitioner had an argument, accused her of cheating and arguing about a vehicle. Petitioner blocked her from going to the bathroom, continued to argue with her, slapped her several times on the chin, hit her head with the car distributor, hit her with a coffee mug. And on that point, Your Honor, the coffee mug, Petitioner testifies that he only broke that coffee mug out of anger after she left. If that was the case, Brianna could never have known that a coffee mug was involved in that incident at all. You're over time, so move along, please. She raised her arms over her head, hit her arms, picked up a hammer and hit her in the hands several times, which lasted hours. Wanted to leave, but he prevented her from hitting her and blocking her. That's what the officer would have testified to? Yes, Your Honor. Thank you. Absolutely. Thank you, counsel. Thank you. Could you please put a minute on the clock? Thank you. It could not have been any clearer in her testimony when she said, well, like I said before, I was scared. Mr. Harloff was right there. She's talking about her preliminary testimony. And in the same chair he's sitting in now. And just earlier today when I was speaking about those things, and I did remember, Mr. Harloff was not present in that chair, and it made it a lot easier for me to talk about it. The thing about the homeboys and the scared is something we'd never heard before. That's something that she added in her testimony that she'd never told the police before, never told the neighbors. The issue about what the test is for Chapman, on page 34 and 35 of my brief, I quote about six United States Supreme Court cases that talk about that it's not simply enough to say would there have been other evidence. If you take that out, would the other evidence have been sufficient? You have to look at the big picture. How did this contribute? And in this case we have to look at the big picture of what happened in this trial. We're talking about a trial that by the next day the verdicts were rendered. Mr. Harloff's attorney had presented a very viable solution to the court. Give me a couple hours. Let me go down and find out what's happening with him medically. And the judge said, no, we're not going to. We're going to go forward. And he misses 38 of the 49 pages of direct testimony of the woman accused of assaulting him, which was the predominant witness. And I'd ask you whether that really constitutes a fair trial as we're supposed to have in this country. Thank you. Thank you both for your helpful arguments. We'll take that case under advisement. The next case on the calendar is King v. Great American Family.
judges: Clifton, Christen, Rufe